NOT FOR PUBLICATION                                              [Docket No. 66]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ENNIS COBB,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GEORGE WESTON BAKERS<br>DISTRIBUTION, INC., DENNIS<br>ATKINSON, MATTHEW McGUIRE, AND<br>PATRICK McCARTHY,<br><br>　　　　　Defendants. | Civil No. 10-676 RMB/JS<br><br>OPINION |

Zakia E. Moore
The Law Offices of J. Edward McCain, III
912 N. 29th Street
Philadelphia, PA 19130
　　Attorneys for Plaintiff

James P. Walsh, Jr.
Jaime N. Morris
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, New Jersey 08540
　　Attorneys for Defendants

**BUMB**, United States District Judge:

Plaintiff Ennis Cobb ("Plaintiff") asserts claims of unlawful discrimination and breach of contract against the Defendants George Weston Bakers Distribution, Inc. ("GWBD"), Dennis Atkinson, Matthew McGuire, and Patrick McCarthy (the

1

"Defendants"). Defendants have moved for summary judgment. For the reasons that follow, that motion is GRANTED.

I. Background

A. The Parties

GWBD is a bakery company that produces products under the brands Arnold, Entenmann's, Thomas, and Stroehmann. Defendants Atkinson, McGuire, and McCarthy were all employees of GWBD affiliates. GWBD sells the exclusive right to distribute its baked goods, in defined geographic areas, to independent operators. Those rights are freely transferrable and independent operators may sell them to other individuals or companies.

In 2004, Plaintiff, an African-American man, purchased certain GWBD distribution rights from an independent operator. As part of Plaintiff's purchase, he also entered into an agreement with GWBD (the "Distribution Agreement"), which governed the terms and conditions of his relationship with GWBD.

B. The Dispute

GWBD asserts that Plaintiff violated the terms and conditions of the Distribution Agreement and, as a result, terminated the Distribution Agreement on May 13, 2006. Plaintiff claims that the termination was discriminatory and that the purported violations of the Distribution Agreement were a pretextual justification for his termination. Prior to

Plaintiff's termination, he filed a complaint with the New Jersey Division of Civil Rights.

As a result of the termination of the Distribution Agreement, Plaintiff was obligated under the terms of the Agreement to sell his distribution rights. Specifically, pursuant to the Agreement, Plaintiff was afforded 90 days to sell the distribution rights to a qualified buyer, and if no sale occurred, GWBD then had the right to sell the distribution rights to a purchaser at the best price it could obtain after proper notice and advertisement. In both cases, as a general condition of sale, the Agreement required Plaintiff to sign a general release releasing GWBD from any claims against it.

In June 2006, Plaintiff negotiated a sale for $103,801 to another individual, but the deal collapsed when the prospective purchaser could not secure financing acceptable to Plaintiff. Shortly thereafter, in the beginning of July, GWBD offered to pay $105,044 for the distribution rights and to assume Plaintiff's delivery truck lease obligations. Plaintiff agreed to GWBD's offer.

Consistent with the Distribution Agreement, GWBD mailed a general release (the "Release") to Plaintiff on July 13, 2006. The Release provided that, in consideration for $1 and other good and valuable consideration, Plaintiff released GWBD "and its past, present and future parent, affiliated and related

companies, divisions and units, and its and their successors and assigns, and each of its and their officers, directors, agents, employees and representatives" (the "Released Parties") from:

    a)    any claim, cause of action, right or interest arising out of [Plaintiff's] ownership of certain Distribution Rights previously purchased by [Plaintiff] pursuant to a certain Bill of Sale previously executed between the parties and the termination thereof, and

    b)    any claim, cause of action, right or interest arising out of [Plaintiff's] actions pursuant to a certain Distributor's Agreement previously entered into between [Plaintiff] and [the Released Parties], and

    c)    any and all other actions, causes of actions, debts, sums of money, accounts, covenants, contracts, agreements, damages and any and all demands whatsoever which against [the Released Parties], the [Plaintiff], his heirs, executors, administrators and assigns have or have ever had.

Defendants' Statement of Undisputed Material Facts, Ex. 17.

     Plaintiff was not given any deadline to sign the Release or discouraged from speaking about the Release with an attorney. He was also informed that he could contact GWBD with any questions he had regarding the Release and other documentation sent to him. Two days after the Release was mailed, on July 15, 2006, Plaintiff received and signed the Release. The evidence is undisputed that At the time Plaintiff signed the Release, Plaintiff: (1) knew of his potential racial discrimination claims; (2) had filed a charge of discrimination with the New Jersey Division of Civil Rights against GWBD based on those claims; and (3) had already engaged counsel and understood that

he could question counsel regarding the Release if he desired. Plaintiff did not, however, avail himself of the opportunity to consult with counsel.  Nor did Plaintiff attempt to negotiate the terms of the Release or request that the Release be waived, both of which are requests GWBD had accommodated in the past. None of these facts are in dispute.

Plaintiff later filed suit alleging unlawful racial discrimination and other claims in the Superior Court of New Jersey, Burlington County.  Defendants moved for summary judgment based on the Release.  The Superior Court denied their motion finding that there were material issues of fact as to whether the Release was signed knowingly and voluntarily.  In particular, the Superior Court found that the Release was "less than clear [because of the Release's] distinction between the distribution agreement and distribution rights" and that "given the distinction . . . the court [could not] say that that the [R]elease is so clear that the waiver of any rights under the distribution agreement was knowing and voluntary."  The Superior Court also alluded to, but does not appear to have based its decision on, factual disputes as to the circumstances surrounding Plaintiff's signing of the release, including that Plaintiff claimed he was forced to sign it during his exit interview while Defendant asserted that he had a lengthy period to review it.  Those factual disputes appear to have been

5

resolved, as Plaintiff no longer disputes that he was mailed the Release and placed under no time pressure to sign it. Plaintiff's suit was later removed to this Court after Plaintiff amended his complaint to assert a claim under 42 U.S.C. § 1981.

II.  Standard

Summary judgment should only be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Mollo v. Passaic Valley Sewerage Comm'rs, 406 F. App'x 664, (3d Cir. 2011)(quotation and citation omitted).

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Products Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983). However, "the mere existence of a scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In the face of such evidence, summary judgment is still appropriate "where the record ... could not lead a rational trier of fact to find for

the nonmoving party ...." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment motions thus require judges to 'assess how one-sided evidence is, or what a 'fair-minded' jury could 'reasonably' decide.'" Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989) (quoting Anderson, 477 U.S. at 265).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(internal citations omitted). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250 (internal citations and quotations omitted).

III. Discussion

Defendants have moved for summary judgment based on the Release and other grounds.  Because this Court finds that Plaintiff released any claims he had against Defendants, the Court does not address these other grounds.

Plaintiff makes two arguments against summary judgment based on the Release: (1) that this Court is bound by the Superior Court's decision that summary judgment based on the release would be inappropriate; and (2) that Plaintiff's signing of the Release was not knowing and voluntary.[1]

A.  The Superior Court's Decision

Plaintiff first contends that this Court is bound by the Superior Court's prior decision.  It is not.  That decision, at most, constitutes "law of the case," which this Court is free to reconsider if: (1) there has been an intervening change in law; (2) new evidence has become available; or (3) reconsideration is necessary to prevent clear error or a manifest injustice. Council of Alternative Political Parties v. Hooks, 179 F.3d 64, 69 (3d Cir. 1999)(listing three grounds that would warrant reconsideration); Pacific Employers Ins. Co. v. Sav-A-Lot of Winchester, 291 F.3d 392, 398-99 (6th Cir. 2002)(finding that only "law of the case" doctrine, and not res judicata or collateral estoppel, was applicable to state court's decision

---

[1] Plaintiff does not dispute that the Release's scope is broad enough to encompass the claims asserted by Plaintiff here.  This Court agrees that the Release encompasses the claims at issue.  The Release covers "any and all actions [and] causes of action" Plaintiff had at the time of its signing against GWBD and the employees of GWBD affiliates like Defendants Atkinson, McGuire, and McCarthy.  Because "any and all" means any and all and does not allow for exception, because all of Plaintiff's claims accrued prior to Plaintiff's signing of the release, and because the Release extends to all of the Defendants, all of the claims at issue here are within the scope of the Release.  See Geraghty v. Ins. Servs. Office, Inc., 369 F. App'x 402, 406 (3d Cir. 2010).

prior to removal to federal court and that doctrine did not limit the court from reconsidering rulings it found to be erroneous); Johnsen v. Burken, 930 F.2d 1202, 1207 (7th Cir. 1991)(holding that "law of the case" doctrine was applicable to federal court revisiting decision of state court after removal of case, but that it did not bind the federal court); Quinn v. Aetna Life & Casualty Co., 616 F.2d 38, 40-41 (2d Cir. 1980)(holding, in matter removed from state to federal court, that re-litigation before federal court of dispute resolved by the state court was not barred by the law of the case doctrine).

The state court's decision appears to have been entirely premised on its finding that the Release's language was unclear. For the reasons discussed below, however, this Court finds that that determination was clearly erroneous and, as such, merits reconsideration. Moreover, while the state court's conclusion does not appear to have been grounded in factual disputes regarding the circumstance surrounding Plaintiff's signing of the release, to the extent it was, those circumstances no longer appear to be in dispute and qualify as "new" evidence warranting reconsideration.[2]

Where, as here, this Court reopens a previously adjudicated matter, it must: (1) take appropriate steps to avoid prejudicial reliance on the prior ruling; and (2) explain the reasons for

---

[2] As set forth above, the parties do not dispute the circumstances of Plaintiff's receipt, and signing, of the Release.

its decision.  Washington-El v. DiGuglielmo, 419 F. App'x 275, 277 (3d Cir. 2011).  The first concern is not implicated here.  Plaintiff will suffer no prejudice from this decision because: (1) the state court's decision did not conclusively resolve the issue of the Release in Plaintiff's favor; (2) Plaintiff was on notice that this would continue to be an issue; and (3) Plaintiff had a full and fair opportunity to, and did, object to application of the Release in his summary judgment briefing.  This Court explains its reasons for reconsidering the state court's judgment below.

    B.    Whether The Release Was Knowing And Voluntary

The state court's decision was premised on its finding that there were material issues of fact as to whether Plaintiff's signing of the Release was knowing and voluntary and therefore valid.  The parties continue to dispute whether Plaintiff knowingly and voluntarily agreed to the Release.  However, the parties do not dispute the material facts relevant to the Court's resolution of that issue and, therefore, this Court may resolve this issue as a matter of law.  Gregory v. Derry Twp. School District, 418 F. App'x 148, 151 (3d Cir. 2011)(holding that court may resolve this issue on summary judgment where no material facts are in dispute).

Plaintiff has raised federal and state statutory discrimination claims and a breach of contract claim.

10

Generally, and with respect to breach of contract claims, "New Jersey follows traditional contract principles on release of actionable claims." Mullen v. New Jersey Steel Corp., 733 F. Supp. 1534, 1548 (D.N.J. 1990). However, in the context of the release of federal and state discrimination based claims, courts apply the more rigorous "totality of the circumstances" test. Id. (describing the totality test as more "rigorous"); Geraghty v. Ins. Servs. Office, Inc., 369 F. App'x 402, 406 (3d Cir. 2010)(explaining that "[t]he 'totality of the circumstances test' applies to a release of both . . . federal claims and those arising under New Jersey law.")(citation omitted). Because, as discussed below, this Court concludes that the Release was valid under the more stringent totality of the circumstances test, it was sufficient to release both Plaintiff's discrimination claims and his breach of contract claim. See Mullen, 733 F. Supp. at 1548 ("Barring unusual state law, then, a release sufficient to waive [statutory discrimination] claims necessarily waives state claims under contract law.").

Under the totality of the circumstances test, the Court looks to seven factors:

(1) the clarity and specificity of the release language;

(2) the plaintiff's education and business experience;

11

 (3) the amount of time plaintiff had for deliberation about the release before signing it;

 (4) whether the plaintiff knew or should have know his rights upon execution of the release;

 (5) whether plaintiff was encouraged or discouraged to seek counsel, had a fair opportunity to do so, or in fact, received benefit of counsel;

 (6) whether there was an opportunity for negotiation of the terms of the release; and

 (7) whether the consideration given in exchange for the release exceeds the benefits to which the plaintiff was already entitled by contract or law.

Geraghty, 369 F. App'x at 405; Bormann v. AT&T Comms., Inc., 875 F.2d 399, 403 (2d Cir. 1989)(cert. denied 493 U.S. 924 (1989)(listing, as factors, whether individual was encouraged or discouraged from seeking counsel and whether individual had a fair opportunity to do so); Swarts v. Sherwin-Williams Co., 244 N.J.Super. 170, 177 (N.J.App.Div. 1990)(same).  The Superior Court applied these same factors and concluded that summary judgment was unwarranted.  This Court disagrees for the following reasons.

 1. Clarity And Specificity Of The Release

 First, the Release plainly and clearly releases <u>any and all</u> causes of action Plaintiff had against Defendants.  Geraghty, 369 F. App'x at 406 (finding that similar language was "clear and unambiguous language that an average person would understand to be all encompassing.").  In addition, the Release was brief

12

and was set-aside in its own document – two other characteristics courts have considered important in assessing a release's clarity.  <u>Riddell v. Medical Inter-Ins. Exchange</u>, 18 F. Supp. 2d 468, 472 (D.N.J. 1998)(looking favorably on the fact that the release was not buried at the bottom of a long contract, but negatively in the fact that it was not "set apart" from other information).  Accordingly, this factor weighs heavily in favor of the Release's validity.[3]

While Plaintiff argues that he had no intent to release his claims, and that the clarity of the Release is undermined by its failure to specifically reference Plaintiff's discrimination claims, these facts do not disturb this Court's conclusion.  With regards to Plaintiff's intent, his apparently mistaken belief as to the Release's scope cannot overcome the facts that he was aware of his claims at the time of his signing of the Release and the otherwise clear language of the Release.  <u>Cirillo v. Arco Chem. Co., a Div. Of Atlantic Richfield Co.</u>, 862 F.2d 448, 452 (3d Cir. 1988)(finding that, even accepting that a plaintiff had "a misguided subjective belief" regarding the scope of a release, that belief "is insufficient to defeat

---

[3]   The state court's decision was clearly erroneous because it ignored this clear language in concluding otherwise.  The state court found that the Release lacked clarity because it confusingly distinguished between waiver of claims premised on the Distribution Agreement and waiver of claims based on Plaintiff's distribution rights.  Whatever ambiguity was created by this language, however, is immaterial given the clarity of the provision in which Plaintiff relinquishes "any and all . . . causes of action."

summary judgment in the face of clear and unambiguous language."); Swarts., 244 N.J.Super. at 178 ("At the time he signed the release, it is undisputed he had a full awareness of his age discrimination rights as evidenced by his prior assertion of his rights in his letter to the personnel department. What his unexpressed intention was is irrelevant."); Sauter, 2009 WL 2424689, at *5 (same); Mosley v. Bay Ship Mgmt., Inc., 174 F. Supp. 2d 192, 198 (D.N.J. 2000)("However, plaintiff's subjective belief is insufficient to sustain his complaint."). Similarly, with respect to the Release's failure to reference specific claims, that failure is far outweighed by the general clarity of the Release and Plaintiff's knowledge of his discrimination claims at the time of the Release, which he had already asserted before the New Jersey Division of Civil Rights. Geraghty, 369 F. App'x at 406 ("Therefore, the clear, expansive language of the Release and [Plaintiff's] own knowledge of a potential CEPA claim outweigh the failure to name specifically the CEPA statute."); Weinberg v. Interep Corp., No. 05-5458, 2006 WL 1096908, at *4 (D.N.J. Apr. 26, 2006)(rejecting plaintiff's argument that failure to specifically reference NJLAD in release vitiated otherwise clear language of release).

2. Plaintiff's Education And Experience

Second, there is no dispute that Plaintiff had sufficient education and experience to understand and execute the release.

Plaintiff, as a high school graduate who had attended some college and had previous business experience, had sufficient education and business experience to satisfy the "minimal threshold" necessary for this factor. Ponzoni v. Kraft Gen. Foods, Inc., 774 F. Supp. 299, 310 (D.N.J. 1991)(describing this inquiry as "a minimal threshold"); Riddell, 18 F. Supp. 2d at 472 (finding that plaintiff who had "taken college courses" and mainly done "clerical" work had sufficient education and experience that she would have ability to understand an appropriately worded release); Dougherty v. Texa Pharmas. USA, No. 05-CV-2336, 2008 WL 508011, at *6 (E.D. Pa. Feb. 20, 2008)(recognizing that college degree was not necessary to satisfy this prong). Accordingly, this factor weighs in favor of the validity of the Release.

    3.    Time For Deliberation

Third, there is no dispute that the amount of time Plaintiff had to consider the Release weighs in favor of finding that the release was knowing and voluntary. While Plaintiff promptly signed and returned the Release, this factor focuses on the time afforded and not the time taken. See Sauter v. Federal Home Loan Bank of New York, No. 08-899, 2009 WL 2424689, at *5 (D.N.J. Aug. 5, 2009)(finding that this factor focuses on time provided, not taken). And Plaintiff was not given a specific deadline to execute the Release and was told he could call a

15

GWBD representative with any questions he had regarding the Release. There is therefore no evidence before this Court that Plaintiff's actions were the product of his being placed in the type of time-pressured, coercive environment that this factor is designed to address. Yousef v. Capital One Fin'l Servs., No. 11-cv-1687, 2011 WL 3739362, at *5 (D.N.J. Aug. 24, 2011)(finding factor satisfied where no evidence that plaintiff was rushed or coerced). Accordingly, this factor weighs in favor of the validity of the Release.

    4.   Plaintiff's Awareness Of Rights

Fourth, there is no dispute that Plaintiff was aware, or should have been aware, of his claims at the time he released them. He specifically testified at deposition that he was aware of his discrimination claims. In fact, he had already filed a complaint with the New Jersey Division of Civil Rights. Plaintiff also was on notice of any potential breach of contract claims, since the Distribution Agreement had already been terminated. Therefore, this factor weighs in favor of the validity of the Release.

    5.   Consultation With Counsel

Fifth, there is no evidence that Plaintiff was encouraged to, or did, avail himself of an attorney in reviewing the Release. Therefore, this factor weighs against the validity of the Release, though it is not dispositve. Riddell, 18 F. Supp.

16

at 473 ("The failure by MIIX to encourage Riddell to seek counsel is not dispositive. However, we conclude that it weighs considerably in favor of finding that the Release is invalid."). Its force here is blunted, however, in light of the facts that: (i) there was no discouragement by Defendants of Plaintiff seeking to consult with an attorney; (ii) Plaintiff, had already engaged counsel at the time of the Release; and (iii) Plaintiff had no set deadline to return the release and therefore had a fair opportunity to consult with counsel. Bormann v. AT&T Communications, Inc., 875 F.2d 399, 403 (2d Cir. 1989)(finding whether plaintiff was discouraged and whether plaintiff had a fair opportunity to consult an attorney to be important factors); Blum v. Lucent Techs., Inc., 2005 WL 4044579, at *7 (N.J. App. Div. May 30, 2006)(same); Swarts v. Sherwin-Williams Co., 244 N.J.Super. 170, 177 (N.J. App. Div. 1990)(same).

    6.   Opportunity To Negotiate

Sixth, there is no dispute that Plaintiff had an opportunity to negotiate the terms of the Release. Plaintiff was specifically directed that he could speak with GWBD concerning any questions he had. Plaintiff does not dispute this. Plaintiff did not avail himself of this opportunity, or even attempt to negotiate the Release's terms. While that failure might be discounted if attempts by Plaintiff to negotiate would have been futile, that failure is meaningful

here, where Defendants have presented evidence that they accommodated requests to modify the Release's terms and waived the Release in the past. Because Plaintiff had an opportunity to negotiate, and did not avail himself of it, this factor weighs in favor of the validity of the Release. <u>Yousef</u>, 2011 WL 3739362, at *6 (recognizing that the "critical consideration" is the "opportunity to negotiate . . . not whether [the plaintiff] actually took advantage of that opportunity.")(citing <u>Sauter</u>, 2009 WL 2424689, at *7).

    7.    Consideration

Finally, Plaintiff received meaningful consideration in exchange for the Release. In exchange for signing the Release and the sale of Plaintiff's distribution rights to GWBD – rights GWBD had no obligation to purchase – GWBD assumed Plaintiff's truck lease obligation and paid $105,044.00 for Plaintiff's distribution rights. This is meaningful consideration because it was consideration that Plaintiff was not otherwise entitled to by contract or law. <u>Cirillo</u>, 862 F.2d at 454-55 (finding that receipt of benefits that plaintiff otherwise would not have been entitled to constituted valid consideration). Therefore, this factor militates in favor of the validity of the release.

## IV. <u>Conclusion</u>

Applying these factors, under the totality of the circumstances, Plaintiff's execution of the Release was knowing

and voluntary.  Defendants' motion for summary judgment is therefore GRANTED and Plaintiff's case is DISMISSED with prejudice.

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge

Dated: June 19, 2012